BATEMAN, justice.
The principal question here is whether the transactions involved were of such a nature as to require the plaintiff to be either a duly licensed real estate broker or salesman or attorney-at-law, within the purview of Article 6573a,[1] in order to maintain this suit. The appellant Howard A. Sunshine sued for a commission of *709 $32,705 plus attorneys’ fees and interest; the trial court sustained appellees’ motion for summary judgment and Sunshine appeals on six points of error.
Appellant sued the appellees Mid-South Construction Company, Inc., Earl Hayes Enterprises, Incorporated, and Earl Hayes individually, alleging that the corporate defendants were the alter ego of Hayes and that the corporate veils should be pierced and Hayes held liable individually for the acts of the corporate defendants; also that Hayes Enterprises is the successor of Mid-South Construction Company, Inc. or has in some way acquired the rights and obligations of the latter, making Hayes Enterprises liable for contractual obligations of Mid-South Construction Company, Inc. Appellant further alleged that appel-lees thereafter consummated negotiations with prospects procured by him and thus became liable for the five per cent commission provided for in a contract dated June 1, 1971.
Although several defenses were alleged by appellees, the only one pertinent to this appeal is the plea that Sec. 19 of Article 6573a, precluded appellant from bringing this action without allegation and proof that he was licensed as a real estate broker or salesman, or as an attorney-at-law. He admitted that he was not so licensed.
The summary judgment evidence showed that appellees were interested in obtaining financing of various FHA projects in which they were interested; that appellant’s business was, among other things, to locate such investors. He testified by deposition that his business is that of a management consultant and that he has been self-employed since 1952 in that capacity; that he does business under the trade-name of Sunshine Exploration Company, whose business is to search for clients and financial sources. He also provides some of the services of a mortgage banker. He described his financial management services as “determining the nature and feasibility of the project and structure of the development, creative financing, assuming project feasibility, and selling them for them.” When asked how he would perform this his answer was:
“Meet with the sponsors or representatives or appointed agents; determine what their objectives were; secure information relative to the proposed project; meet with the various individuals involved, with the person in charge, and their department heads or planners, engineers, designers, as the case may be; their comptroller, finance — in-house finance people; and put a presentation together involving the specific type of project that is proposed, and, in a form that would be suitable for presentation to the institution that would be interested in such investment opportunity.”
Appellant went to New York and talked to certain officials of the First National City Bank, including Boyd D. Watkins, an assistant cashier, concerning the matter of obtaining financing for the projects. Watkins came to Dallas and conferred with Boyce Royal, president of The Enterprises of Earl Hayes, Vernon Fuqua, president of Mid-South Construction Company, Inc., and Warren Price, another associate of Hayes, and upon his return to New York he wrote a letter dated May 14, 1971 to Royal stating that clients of his bank might be interested in purchasing limited partnership interests “where a subsidiary of substance of Earl Hayes Enterprises was acting as general partner,” that for the two Florida projects that had been discussed the bank’s clients would invest 11% of the FHA mortgage, payments to be made according to a certain schedule, the limited partners to receive 100% of the depreciation in the project, and 80% of the “cash flow” and the general partner would receive 20% of the “cash flow.” The letter contained other suggestions not necessary to be detailed here.
*710 On June 1, 1971, Mid-South Construction Company, Inc. wrote to appellant the following letter, which is the contract upon which the suit is based:
“We acknowledge, that through your efforts we have been introduced to, and met with:
Mr. Boyd D. Watkins
First National City Bank
399 Park Avenue
New York, New York 10022
for the purpose of their clients’ acquiring limited partner equity investments in FHA projects, or others, with which we are involved.
As of this date, Mr. Watkins has been presented the following projects:
The South Crest Apartments — Dallas, Texas
Richardson Arms Apartments — Ft. Myers, Florida
Royal Manor Apartments — Ft. Myers, Florida
Holiday Lake Apartments — Pompano Beach, Florida
Should we consummate negotiations with First National City Bank, and/or their clients for the projects as listed above, we agree to pay Sunshine Exploration Company, or assigns, a fee equivalent to five (5%) per cent of the total equity paid. The earned commission will be paid in the time sequence of the equity payments.
Kindly confirm that the foregoing is in accordance with your understanding by signing and returning the duplicate hereof.
Sincerely,
MID-SOUTH CONSTRUCTION CO., INC.
S/ Vernon E. Fuqua
President
Confirmed:
By: S/ Howard A. Sunshine, Date: 2 June, 1971 VEFxlk”
Certain limited partnerships were formed by Hayes and his associates after and as a result of the procurement of prospective investors by appellant. These persons did purchase interests in the said limited partnerships, becoming limited partners therein, and Hayes was the general partner. He and another, who owned options on the land on which the apartment projects were to be built, exercised the options and conveyed the land by warranty deeds to the limited partnerships.
Article 6573a, Sec. 4, subd. (1) (j) defines a “Real Estate Broker,” as one who “procures or assists in the procuring of prospects, calculated to result in the sale, exchange, leasing or rental of real estate.” Section 19 of the same Act provides that no person or company may maintain an action for the collection of compensation for the performance in this State of any of the acts set out in subdivision (1) of Section 4 without alleging and proving that the person or company performing such brokerage services was duly licensed as a broker or a salesman or as an attorney-at-law.
Appellees’ motion for summary judgment was based entirely upon appel *711 lant’s failure to have a license as a real estate broker or salesman or as an attorney-at-law. In our opinion, appellees did not carry their burden of showing the absence of any genuine issue of material fact and that they were entitled to judgment as a matter of law, pursuant to Texas Rules of Civil Procedure 166-A. The summary judgment evidence shows that appellees needed financing for the cost of the projects over and above the amount they could borrow by mortgaging the properties, and agreed by written contract to pay appellant a five per cent commission for procuring such financing. They offered no evidence that appellant sold or tried to sell any of their real property, or that he did any of the things set forth in Sec. 4(1) of Article 6573a.
If appellant could be said to have sold the Bank’s clients anything at all, it consisted of interests in the limited partnerships. In doing so he was not acting as a real estate broker or salesman and hence required no license as such. See Thompson v. Newman, 378 S.W.2d 879, 881 (Tex.Civ.App., Waco 1964, no writ). Article 6132a sets forth in great detail the rights, duties and obligations of limited and general partners in limited partnerships, and Sec. 19 thereof specifically provides that “a limited partner’s interest in the partnership is personal property.”[2]
Appellant contends, in his first four points of error, that the trial court erred in holding that his services were governed by the Texas Real Estate License Act (art. 6573a), and in holding that the burden was on appellant to plead and prove that he was licensed pursuant to that Act. These points of error are sustained. We do not wish this action to be understood as holding that appellant is entitled to recover or that he is not entitled to recover. This is a summary judgment proceeding and the facts may not be fully developed. Our holding is only that summary judgment was not authorized by the summary judgment evidence. See Kuehnert v. Ong, 373 S.W.2d 821, 823 (Tex.Civ.App., Houston 1963, writ ref’d n. r. e.).
Appellant’s fifth and sixth points of error attack the applicability of Article 6573a on other grounds. Our disposition of the first four points makes it unnecessary for us to discuss or pass upon the fifth and sixth.
For the reasons hereinabove given, the judgment is reversed and remanded for trial.
Reversed and remanded.

. All references to Articles are to Vernon’s Texas Revised Civil Statutes Annotated.

. Article 6132b sets forth the rules pertaining to general partnerships, and a similar provision is found in Sec. 26, as follows: “A partner’s interest in the partnership is his share of the profits and surplus, and the same is personal property for all purposes.”